

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/10/2010**

In re:                                    §
                                          §
DOUGLAS R. JOHNSON,                       §     **Case No. 08-36584-H4-11**
                                          §     **Chapter 11**
    Debtor.                  §
                                          §
                                          §

## MEMORANDUM OPINION ON DEBTOR'S APPLICATION FOR EMPLOYMENT AND RETENTION OF SPECIAL COUNSEL IN CONNECTION WITH THE MOTION TO MODIFY THE FINAL DIVORCE DECREE
[Doc. No. 272]

### I. INTRODUCTION

This Memorandum Opinion addresses an issue that intersects family law and bankruptcy law. This Court must decide whether to allow an individual Chapter 11 debtor to employ special counsel who would seek to convince this Court to modify a final divorce decree. Douglas R. Johnson (the Debtor) argues that approval of proposed special counsel is in the best interest of his Chapter 11 estate, as proposed counsel represented the Debtor in his pre-petition divorce proceeding and is well-versed in family law matters.

The application for employment is opposed by Melanie E. Johnson (Ms. Johnson)—Debtor's former wife and a creditor—on her behalf and on behalf of their two minor children as a parent managing conservator. Ms. Johnson argues that: (1) employment of special counsel would solely benefit the Debtor, not the creditors of his estate; (2) proposed special counsel would be a significant expense borne by the estate; (3) the Debtor's attempt to modify the final divorce decree can be adequately handled by Debtor's current bankruptcy counsel; (4) the Debtor's obligations resulting from the divorce decree should not be modified for a variety of

1

reasons—not the least of which is that they are non-dischargeable debts—leading to the conclusion that any attempt to modify the decree is a waste of time and resources; and (5) public policy dictates that this Court should abstain from this issue for purposes of comity. For the reasons stated herein, this Court agrees with Ms. Johnson and denies the Debtor's application for employment of special counsel.

The Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 9014 and Federal Rule of Civil Procedure 52, as incorporated into Federal Rule of Bankruptcy Procedure 7052. To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such. The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

## II. FINDINGS OF FACT

### A. The Debtor and Ms. Johnson's Divorce

1.      On January 25, 2008, the 245th Judicial District Family Court of Harris County issued a Final Decree of Divorce (the Divorce Decree) in Cause No. 2005-57846, ending the marriage of the Debtor and Ms. Johnson. [Ms. Johnson's Exhibit No. 4, p. 1]. Neither the Debtor nor Ms. Johnson appealed the Divorce Decree.

2.      The terms of the Divorce Decree, which is sixty-two pages long without exhibits, were reached as a result of mediation and arbitration. [Ms. Johnson's Exhibit No. 4, p. 2].

3.      The Debtor and Ms. Johnson were appointed Joint Managing Conservators of their two minor children, ages eight and nine at the time of this Opinion. [Ms. Johnson's Exhibit No. 4, pp. 2–3]. Ms. Johnson has possession of the children for all times not specifically granted to the

Debtor [Ms. Johnson's Exhibit No. 4, p. 14]; the Debtor's right of possession primarily consists of alternating weekends, alternating spring-breaks, and an extended summer period. [Ms. Johnson's Exhibit No. 4, pp. 8–10].

4.  Pursuant to the terms of the Divorce Decree, the Debtor agreed to and was ordered to fulfill the following obligations concerning child support: (1) to pay Ms. Johnson monthly child support of $3,500.00 until any child turns eighteen,[1] marries, dies, or his disabilities of minority are otherwise removed for general purposes[2] [Ms. Johnson's Exhibit No. 4, p. 17]; (2) to provide medical support and health insurance coverage for each child as additional child support [Ms. Johnson's Exhibit No. 4, p. 20]; (3) to pay Ms. Johnson one half of the monthly cost of a housekeeper [Ms. Johnson's Exhibit No. 4, p. 27]; (4) to pay each child's reasonable and necessary private school costs through the child's graduation from high school [Ms. Johnson's Exhibit No. 4, p. 28]; (5) to pay reasonable non-school related expenses for each child, such as cell phones, sports related activities, summer programs, and auto insurance premiums [Ms. Johnson's Exhibit No. 4, p. 29]; (6) to deposit $10,000.00 each year into an account that Ms. Johnson shall control to be used exclusively for reasonable travel expenses for the children [Ms. Johnson's Exhibit No. 4, p. 30]; (7) to purchase a reasonable automobile for each child when that child attains a driver's license [Ms. Johnson's Exhibit No. 4, p. 30]; and (8) to pay each child's reasonable college tuition and related expenses [Ms. Johnson's Exhibit No. 4, p. 31].[3] The provisions for child support listed above must be paid from the Debtor's estate in the event of his death. [Ms. Johnson's Exhibit No. 4, p. 32].

---

[1] If any child reaches the age of eighteen but has not graduated from high school, the Debtor must continue paying child support for as long as the child is enrolled in an accredited secondary school—or private secondary school—in a program leading toward a high school diploma. [Ms. Johnson's Exhibit No. 4, p. 17].

[2] See Tex. Fam. Code Ann. § 154.001(a).

[3] This list is not to be construed as exhaustive. The Debtor may have additional obligations pursuant to the Divorce Decree not listed above.

5.      Also pursuant to the terms of the Divorce Decree, the Debtor agreed to and was ordered to fulfill the following obligations concerning division of the marital estate: (1) to execute and abide by the terms of three interest-bearing promissory notes payable to Ms. Johnson in the amount of $5,000,000.00 [Ms. Johnson's Exhibit No. 4, Exhibit E], $1,550,000.00 [Ms. Johnson's Exhibit No. 4, Exhibit F], and $1,112,713.27 [Ms. Johnson's Exhibit No. 4, Exhibit G], [Ms. Johnson's Exhibit No. 4, pp. 39, 56], [Ms. Johnson's Exhibit No. 4, Exhibit B][4]; (2) to pay Ms. Johnson the first $3,000,000.00 of net proceeds from the ordered sale of real properties located in Houston, Texas and Petroskey, Michigan (the Houses), with the same to be a guaranteed minimum amount, regardless of the actual sale price [Ms. Johnson's Exhibit No. 4, pp. 39, 45–46, Exhibit B]; (3) to pay for all carrying costs of the Houses for as long as it takes to sell them, which includes all mortgages, taxes, insurance, and house staff salaries [Ms. Johnson's Exhibit No. 4, p. 40]; (4) to pay Ms. Johnson $10,000.00 per month for all staff salaries, pool and house supplies, landscaping, and similar items for the Texas house until the sale of the house or until the Debtor elects to reside at the property[5] [Ms. Johnson's Exhibit No. 4, pp. 41–42]; (5) to pay Ms. Johnson fifty percent (50%) of any net proceeds over $6,000,000.00 from the sale of the Houses [Ms. Johnson's Exhibit No. 4, p. 45]; (6) to pay Ms. Johnson sixty percent (60%) of the total appraised value of any sold household items that are not deemed separate property [Ms. Johnson's Exhibit No. 4, pp. 47–49]; (7) to pay Ms. Johnson fifty percent (50%) of the proceeds from the sale of numerous watercraft located in Michigan [Ms. Johnson's Exhibit No. 4, pp. 50–

---

[4] The three promissory notes are secured by a pledge and security agreement, which enumerated the following as collateral: (1) 42.7067 shares of Johnson Broadcasting of Dallas, Inc. (JBD) common stock, (2) all options and other rights to acquire additional shares of JBD capital stock, and (3) all assets and personal property of the Debtor, including all assets and personal property awarded the Debtor pursuant to the Divorce Decree. [Ms. Johnson's Exhibit No. 4, pp. 49-50, Exhibit H].
[5] Debtor is to be reimbursed for all carrying costs and expenses paid for the Houses up to a cumulative total of $2,000,000.00 from the sale proceeds of the Houses and numerous watercraft, subject to the satisfaction of certain payments to Ms. Johnson. [Ms. Johnson's Exhibit No. 4, pp. 42-43].

51]; (8) to provide Ms. Johnson fifty percent (50%) of the proceeds from the sale of numerous automobiles and watercraft located in Texas [Ms. Johnson's Exhibit No. 4, pp. 51–52]; and (9) to pay Ms. Johnson $25,000.00 per month of alimony [Ms. Johnson's Exhibit No. 4, p. 53].[6]

6.      Under the terms of the Divorce Decree, Ms. Johnson was granted exclusive use and possession of the Texas house unless the Debtor elects to pay her $3,000,000.00, in which event he will obtain exclusive use and possession sixty days from the date of payment. [Ms. Johnson's Exhibit No. 4, p. 44].

7.      Finally, pursuant to the Divorce Decree, the Debtor was ordered to purchase and maintain in full force a life insurance policy with a cumulative death benefit of at least $8,000,000.00, with Ms. Johnson being named as sole beneficiary in order to insure payment of the aforementioned obligations.[7] [Ms. Johnson's Exhibit No. 4, p. 33].  The Debtor was to fund $3,000,000.00 of the policy personally, and at least $5,000,000.00 of the policy was to be funded by the Debtor's businesses—Johnson Broadcasting, Inc. (JB) and JBD—which are both now in Chapter 11.

**B.  Procedural history of the Debtor's Chapter 11 cases and affiliated cases**

8.      On October 13, 2008, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.[8]  [Docket No. 1].  The Debtor continues to act as a debtor in possession under 11 U.S.C. § 1107.  On the same day, the Debtor signed and filed Chapter 11 petitions for JB (Case No. 08-36583; *In re Johnson Broadcasting, Inc.*; In the Southern District of Texas,

---

[6] Once again, this list is not to be construed as exhaustive.  The Debtor may have additional obligations pursuant to the Divorce Decree not listed above.

[7] To the extent that the total cumulative outstanding unpaid balance of the obligations secured by the Debtor's life insurance policy falls below $12,000,000.00, the total amount of coverage may be reduced to a death benefit equal to no less than sixty-seven percent (67%) of the outstanding unpaid balance. [Ms. Johnson's Exhibit No. 4, p. 35].

[8] Any reference hereinafter to "the Code" refers to the United States Bankruptcy Code.  Further, reference to any section (*i.e.* §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code.  Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

Houston Division) and JBD (Case No. 08-36585; *In re Johnson Broadcasting of Dallas, Inc.*; In the Southern District of Texas, Houston Division).  Both business bankruptcies are before this Court and are jointly administered under Case No. 08-36583.

9.      On October 22, 2008, the Debtor sought to employ Craig H. Cavalier (Cavalier) as his general bankruptcy counsel pursuant to 11 U.S.C. § 327(a).  In the Debtor's application to employ Cavalier, the Debtor submitted that Cavalier's duties will be to:

> a. take all necessary actions to protect and preserve the estate of the Debtor, including the prosecution of actions on the Debtor's behalf, the defense of any actions commenced against the Debtor, the negotiation of disputes in which the Debtor is involved, and the preparation of objections to claims filed against the Debtor's estate;
>
> . . . .
>
> d. advise the Debtor in respect of bankruptcy or other such services as requested; and
>
> e. perform all other legal services in connection with this Chapter 11 case.

[Docket No. 11, ¶ 7].

10.     On December 21, 2009, Ms. Johnson filed a Motion for Relief from Stay respecting many of the terms of the Divorce Decree listed above.  [Docket No. 213].  On March 18, 2010, this Court lifted the automatic stay and permitted Ms. Johnson to exercise her statutory and contractual rights as to all of the Debtor's personal property excluding only the stock in JBD and an ivory vase.  [Docket No. 279].  The Court further ordered Ms. Johnson to sell the property for a fair value and receive all of the proceeds of the sale, with forty percent (40%) of the net sales proceeds to be applied to the amount due and owing on Debtor's promissory notes as required. [Docket No. 279].

11.     On January 29, 2010, the Debtor filed a Motion to Modify Decree in Suit Affecting the Parent-Child Relationship and for Modification of Property Division [Docket Nos. 226, 227],

which was amended on March 1, 2010 (the Motion to Modify). [Docket No. 274]. The Debtor

provides a cursory listing of his obligations pursuant to the Divorce Decree, submits that his

circumstances have since changed significantly, and requests the Court to modify the terms and

conditions of the Divorce Decree. [Docket No. 274, ¶¶ 2, 5, 8]. The Motion to Modify is set for

oral argument on June 22, 2010. [Docket No. 308].

12.     On February 19, 2010, Ms. Johnson requested this Court to grant her a priority claim of

at least $275,000.00 for what she asserts are unsecured pre-petition domestic support obligations

pursuant to § 507(A)(1)(a), as well as an administrative expense claim of at least $575,000.00,

plus interest, for alleged post-petition contractual alimony and other obligations arising from the

Divorce Decree. [Docket No. 245, ¶¶ 18–19].

13.     On February 22, 2010, Ms. Johnson initiated Adversary Proceeding No. 10-03084 against

the Debtor, seeking a determination of non-dischargability and a declaratory judgment pursuant

to §§ 523(a)(5) and 523(a)(15). [Docket No. 252], [Adv. Docket No. 1].

14.     On February 22, 2010, Ms. Johnson also filed a Motion for Abstention from Hearing

and/or for Abatement of Debtor's Motion to Modify (Motion to Abstain or Abate). [Docket No.

253]. Ms. Johnson makes several arguments as to why this Court should abstain from

adjudicating the Motion to Modify, among them: (1) the Supreme Court has disfavored the

exercise of jurisdiction in basic family law areas; (2) alimony, support, and maintenance are non-

dischargeable domestic support obligations, (3) BAPCPA[9] extended non-dischargability to

property settlements; (4) the Divorce Decree provided the 245th Judicial District Court of Harris

County with on-going jurisdiction; and (5) the Texas Family Law Code specifically prohibits the

---

[9] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

modification of a property settlement. [Docket No. 253, ¶ 12]. Ms. Johnson further argues that this Court should abstain for purposes of comity. [Docket No. 253, ¶ 15].

15. On February 25, 2010, Ms. Johnson alternatively moved this Court to dismiss Debtor's Motion to Modify (the Motion to Dismiss), arguing that the Debtor erred procedurally by seeking to modify a final decree of divorce without first initiating a civil action and serving Ms. Johnson with citation. [Docket No. 257, ¶ 11].

16. On February 25, 2010, the Debtor responded to Ms. Johnson's request for administrative and priority expenses, denying the substantive portions of Ms. Johnson's motion. [Docket No. 262].

17. On February 26, 2010, the Debtor responded to Ms. Johnson's Motion to Abstain or Abate, asserting "whether a particular debt is a support obligation, or part of a property settlement, is a question of federal bankruptcy law, *not state law*." [Docket No. 265, ¶ 4] (emphasis in original).

18. On March 1, 2010, the Debtor filed an Application for Order Authorizing the Employment and Retention of Nichols Law, P.L.L.C., as Special Counsel for Debtor in Connection With the Modification of the Final Divorce Decree Affecting the Parent-Child Relationship and Property Division (the Application for Employment of Special Counsel) pursuant to 11 U.S.C. § 327(e). [Docket No. 272].

19. On March 1, 2010, Ms. Johnson filed her Objection to Engagement/Employment and Appearance of Special Counsel (Objection) [Docket No. 270], which was amended on May 12, 2010 [Docket No. 310].

20. On April 29, 2010, the Court consolidated the Debtor's Motion to Modify and Ms. Johnson's Motion for Allowance for Administrative and Priority Expenses and for Charging

8

Order with Adversary No. 10-3084.  [Docket No. 308].  The Court set the same for trial on June 22, 2010.  [Docket No. 308].

### C.  The Debtor's arguments in support of the Application to Employ Special Counsel

21.      In his Application for Employment of Special Counsel, the Debtor seeks to retain the services of Nichols Law, P.L.L.C. (Nichols Law) under a general retainer to represent the Debtor as his special counsel in connection with the Motion to Modify.  [Docket No. 272, ¶ 4].  At the May 13, 2010 hearing on the matter, the Debtor's bankruptcy counsel, Cavalier, asserted that he is not qualified in matters of family law.  [Tape Recording, 5/13/2010 Trial at 3:13:19–23 p.m.].

22.      The Debtor maintains that the employment of Nichols Law would include: (1) preparing and filing all related documents in connection with the Motion to Modify, (2) attendance at all related hearings, and (3) general advice and counseling regarding the Motion to Modify and matters related to the divorce proceedings.  [Docket No. 272, ¶ 5].

23.      The Debtor also contends that most of the work would be done by John F. Nichols, Sr. (Nichols), whose hourly rate is $550.00.  [Docket No. 272, ¶ 11].

24.      At the hearing on the matter, Nichols testified that he is an attorney with forty years experience in family law, [Tape Recording, 5/13/2010 Trial at 2:54:08–18 p.m.], that he does not practice any bankruptcy.  [Tape Recording, 5/13/2010 Trial at 2:59:06–09 p.m.], and that he represented the Debtor in his divorce from Ms. Johnson.  [Tape Recording, 5/13/2010 Trial at 2:54:19–22 p.m.], [Tape Recording, 5/13/2010 Trial at 3:02:27–47 p.m.].  Nichols is a signatory in the Divorce Decree as "Attorney for Petitioner" (*i.e.*, the Debtor).  [M. Johnson Ex. 4 5/13/2010 Trial, p. 62].

25.      Nichols also asserts that he does not hold any interest adverse to the Debtor or to his estate with respect to the Divorce Decree or the Motion to Modify.  [Docket No. 272, Exhibit A].

26.     In support of his request, the Debtor submits that "Nichols Law represented the Debtor in

the [d]ivorce [p]roceeding and has substantial expertise and experience in connection with the

same." [Docket No. 272, ¶ 4].  The Debtor also believes that employment of Nichols Law as his

counsel is "necessary." [Docket No. 272, ¶ 5].  Further, the Debtor argues that:

> The retention and employment of Nichols Law would be to the material benefit of
> the Debtor and is in the best interest of the estate because Nichols Law is familiar
> with the [d]ivorce [p]roceeding and the matters contained in the Motion to
> Modify.  In addition, Nichols Law is familiar with the issues that are likely to
> arise during the prosecution of the Motion to Modify and will thus be able to
> handle the same in a far more efficient manner than Debtor's bankruptcy counsel.

[Docket No. 272, ¶ 9].

27.     The Debtor's principal argument is that Ms. Johnson is not the only creditor of the estate;

and to the extent that the Debtor, through his current bankruptcy counsel with the assistance of

Nichols, can reduce any amounts due Ms. Johnson, the remaining creditors will benefit.  [Tape

Recording, 5/13/2010 Trial at 3:17:50–3:18:59 p.m.].  Nichols further testified that:

> I'm here to assist [Cavalier] in that regard to the extent that the court, under the
> bankruptcy code, can modify or will assume jurisdiction over the matter to
> modify a divorce proceeding.  And to the extent it can be done, yes, we're asking
> it all be done in one proceeding as opposed to having multiple proceedings
> proceeding on different tracks with multiple attorneys and multiple costs.

[Tape Recording, 5/13/2010 Trial at 3:06:22–49 p.m.].

28.     The Debtor includes no law in his Application for Employment of Special Counsel other

than § 327(e) to support his request.

**D. Ms. Johnson's arguments against the Motion to Modify and the Application for Employment of Special Counsel[10]**

29.     Ms. Johnson strongly opposes both the Debtor's Motion to Modify and his Application for Employment of Special Counsel.  Her primary argument is that appointment of special counsel is not in the best interest of the Debtor's Chapter 11 estate as it would drain money from the estate.  [Tape Recording, 5/13/2010 Trial at 3:10:43–52 p.m.].  She repeatedly states in her Objection, and in her testimony at the hearing, that Nichols' employment would benefit solely the Debtor and is not in the best interest of his estate.  [Tape Recording, 5/13/2010 Trial at 3:14:13–3:15:05 p.m., 3:16:51–3:17:06 p.m.], [Docket No. 310, ¶¶ 8–9].  Ms. Johnson asserts that the "estate should not bear the additional expense of an attorney who is seeking to use the Debtor's bankruptcy as a sword rather than a shield."  [Docket No. 310, ¶ 8].  Further, she argues that employment of "a very expensive special counsel" would be detrimental to her, the children, and the other creditors of the estate.  [Docket No. 310, ¶ 9].

30.     In explaining how the Debtor's Motion to Modify will benefit only the Debtor as opposed to the estate, Ms. Johnson notes—and the Debtor stipulates—that the children are both under the age of ten; pursuant to the terms of the Divorce Decree, the Debtor must continue to provide for them until they turn eighteen or graduate from secondary school.  [Tape Recording, 5/13/2010 Trial at 3:09:01–3:10:16 p.m.].  Further, in her view, the Debtor's bankruptcy case will terminate well before that time.  [Tape Recording, 5/13/2010 Trial at 3:09:10–21 p.m.].  Ms. Johnson asserts that the Debtor will receive a significant benefit well beyond the close of this case to the detriment of the children.  [Tape Recording, 5/13/2010 Trial at 3:15:10–38 p.m.].  Also, in her

---

[10] At this juncture, the Court makes no findings or conclusions on the merits of the Debtor's Motion to Modify.  The Court has scheduled a separate hearing on this Motion for June 22, 2010.  However, in order to provide background and clarity regarding this Court's ruling on the Application to Employ Special Counsel, the Court makes reference to the Motion to Modify.

judgment, Nichols' hourly rate of over $500.00, given the rapidly approaching termination of this case, will negate any benefit the estate receives as a result of Nichols' employment. [Tape Recording, 5/13/2010 Trial at 3:19:04–38 p.m.].

31.    Ms. Johnson's next argument is that she would be unable to obtain special counsel of her own due to the Debtor's failure to pay her pursuant to the terms of the Divorce Decree. [Tape Recording, 5/13/2010 Trial at 3:10:53–59 p.m.], [Docket No. 310, ¶ 9].

32.    Third, Ms. Johnson argues if, as the Debtor's Motion to Modify states, the Debtor is seeking relief based upon his financial change of circumstances, then Cavalier, Debtor's duly-appointed bankruptcy counsel, is competent to represent the Debtor regarding this matter. [Docket No. 310, ¶ 9]. Ms. Johnson argues that federal bankruptcy law, not state law, governs both the Debtor's Motion to Modify and Ms. Johnson's numerous attempts to obtain funds from the Debtor's estate. [Docket No. 310, ¶ 9].

33.    Finally, Ms. Johnson continues to attack the merits of the Debtor's Motion to Modify itself. Ms. Johnson rejects the Debtor's conclusions of law and asserts that the debts due and owing her are non-dischargeable debts under 11 U.S.C. §§ 525(a)(5) and (15). [Tape Recording, 5/13/2010 Trial at 3:15:06–19 p.m.], [Docket No. 310, ¶ 9]. Additionally, in her Motion to Abstain or Abate, Ms. Johnson argues that comity lies in permitting the 245th Judicial District Court to address any motions concerning the modification of the Divorce Decree. [Docket No. 253, ¶ 15]. Asserting that the Motion to Modify lacks merit, Ms. Johnson would move the Court that Nichols should not appear in any capacity, much less one in which the estate will not benefit. [Docket No. 310, ¶ 12].

### III. CREDIBILITY OF WITNESSES

**A. John F. Nichols, Sr.**

Nichols testified in the May 13, 2010 hearing on the matter. The Court finds Nichols to be very credible on all issues about which he testified.

**B. Melanie E. Johnson**

Ms. Johnson testified in the May 13, 2010 hearing on the matter. The Court finds Ms. Johnson to be very credible on all issues about which she testified.

### IV. JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(I), (J), (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

### V. CONCLUSIONS OF LAW

11 U.S.C. § 327 provides:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys . . . . to represent or assist the trustee in carrying out the trustee's duties under this title.

> . . . .

13

> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327. The Debtor is currently reorganizing under Chapter 11 as a debtor in possession. [Finding of Fact No. 1]. Pursuant to 11 U.S.C. § 1107(a), the debtor in possession is granted most of the powers of the trustee. Section 327(e) therefore allows the Debtor to employ special counsel with the court's approval subject to the four-prong test listed below. *In re Am. Avia Associates-SEA*, 150 B.R. 24, 26 (Bankr. S.D. Tex. 1992).

When interpreting a statute, a court should begin by examining its language. *Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 262 (5th Cir. 2009). "When the language is plain, we must enforce the statute's plain meaning, unless absurd." *Id.* In reading § 327(e), four requirements emerge to employ special counsel: (1) employment of the attorney must be for a specified special purpose, which does not include representing the trustee in conducting the case, (2) the attorney must have previously represented the debtor, (3) the employment of the attorney must be in the best interest of the estate, and (4) the attorney must not have any interest adverse to the debtor or the estate with respect to the matter on which special counsel is to be employed. *In re Potter*, No. 7-05-14071, 2009 WL 2922850, *1 (Bankr. D. N.M. June 12, 2009). The Debtor has the burden of proof to show that the employment is proper. *Needler v. Rendlen (In re Big Mac Marine)*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005).

The Debtor in this case has satisfied requirements two and four above. It is uncontested that Nichols represented the Debtor in his divorce proceeding. [Finding of Fact No. 24]. Also, Nichols has testified, and this Court concludes, that he does not hold any interest adverse to the Debtor or to his estate with respect to the Divorce Decree or the Motion to Modify. [Finding of

Fact No. 25]. However, this matter requires further discussion of the "specified special purpose" and "best interest of the estate" requirements.

In exercising its discretionary powers under § 327, the Court takes into account the particular facts and circumstances surrounding the case. *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999). The Court also notes that § 327 operates as a judicial check on the power of the debtor in possession acting as trustee. *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 109 (2d Cir. 2001) (affirming bankruptcy court's denial of trustee's attempt to employ special counsel).

## A. Employing Nichols to serve as lead counsel in the Debtor's Motion to Modify in this Court is not for a specified special purpose.

The wording of §§ 327(a) and (e) facially indicates that the duties of special counsel appointed under § 327(e) are distinct from those of general bankruptcy counsel appointed under § 327(a). Counsel appointed under § 327(e) are explicitly barred from "represent[ing] the trustee in conducting the case."[11]  11 U.S.C. § 327(e); *In re NRG Resources, Inc.*, 64 B.R. 643, 647 (W.D. La. 1986). The *Am. Avia Associates-SEA* court discussed the legislative history of § 327(e) as follows:

> The Congressional history of this section expressly provides that "[t]his subsection does not authorize the employment of the debtor's attorney to represent the estate generally or represent the trustee in the conduct of the bankruptcy case. The subsection will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 328 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. at 38-39 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5824-5825, 6284-6285.

*Am. Avia Associates-SEA*, 150 B.R. at 26.

---

[11] "The term 'conducting the case' is not defined in the Bankruptcy Code. However, the term has been recognized to include matters related to formulation of a chapter 11 plan, and/or liquidation of the debtor's assets." *In re Running Horse, L.L.C.*, 371 B.R. 446, 453 (Bankr. E.D. Cal. 2007).

Examples of an acceptable purpose of counsel appointed under § 327(e) include: litigating a products liability claim that arose pre-petition, *In re Gelsinger*, 2000 U.S. Dist. LEXIS 1026 (E.D. Pa. Feb. 7, 2000); representing the debtor in an appeal of a criminal conviction, *United States v. Miller, Cassidy, Larroca & Lewin (In re Warner)*, 141 B.R. 762 (M.D. Fla. 1992); and collecting certain accounts receivable and representing the debtor in ongoing non-bankruptcy litigation after four years of pre-petition discovery. *In re Statewide Pools, Inc.*, 79 B.R. 312 (Bankr. E.D. Ohio 1987).

The Debtor attempts to appoint Nichols for the purpose of modifying the Divorce Decree between the Debtor and Ms. Johnson. [Finding of Fact No. 22]. Cavalier, the Debtor's bankruptcy counsel, asserted at the hearing on the matter that he is not well versed in matters of family law. [Finding of Fact No. 21]. Although never explicitly stated, the obvious implication from the Debtor and his general counsel is that a modification of the Divorce Decree is a family law issue which requires the assistance of special family law counsel. Yet, the Debtor asserts in his response to Ms. Johnson's Motion to Abstain or Abate that "whether a particular debt is a support obligation, or part of a property settlement, is a question of federal bankruptcy law, *not state law*." [Finding of Fact No. 17] (emphasis in original). The Debtor cannot have it both ways. On the one hand, the Debtor asserts that his obligations to Ms. Johnson are modifiable in this Court under federal bankruptcy law—*i.e.*, in the area of law in which Cavalier specializes. On the other hand, the Debtor and Cavalier argue that modifying the terms of the Divorce Decree is a family law issue that requires the expertise of Nichols. Stated differently, the Debtor wants to have his cake and eat it too when it comes to spending estate monies to pay for two very capable, but not inexpensive, attorneys. This, the Court will not countenance. Ms. Johnson has

one capable attorney handling her representation; the Debtor has failed to prove to this Court that he should have more than one capable attorney handling his representation.

The case most germane to the issue at hand is *In re Goldstein*, 383 B.R. 496, (Bankr. C.D. Cal. 2007). In *Goldstein*, husband and wife debtors jointly filed for relief under Chapter 11. *Id.* at 497. At the time of their filing, the debtors were in the process of ending their marriage. *Id.* at 498. On the same day they filed their petition, the debtors individually filed motions for authorization to employ their respective divorce counsel to finalize their divorce. *Id.* The court granted the debtors' motions. *Id.* at 502.

In analyzing the specified special purpose requirement of § 327(e), the *Goldstein* court first noted that special counsel is typically appropriate "when an attorney is employed to handle a specific legal action that is unrelated to the reorganization and the attorney is particularly suited for that action." *Id.* at 501. The court held that employment of divorce counsel to allow the debtors to proceed with the dissolution of their marriage satisfied the specified special purpose requirement. *Id.* at 502. In making its decision, the Goldstein court noted that "preventing a debtor from retaining counsel to get a divorce is not one of the purposes of the bankruptcy code." *Id.* at 499.

Here, the Debtor seeks not to *obtain* a divorce in state court, but to *modify* his Divorce Decree in bankruptcy court. The Debtor seeks to modify his financial obligations under the Divorce Decree that was finalized nine months before his Chapter 11 petition as a result of his bankruptcy. [Findings of Fact Nos. 1, 11]. Unlike the majority of instances examined by this Court where special counsel was approved under § 327(e), the Debtor's divorce proceeding is not ongoing. There are numerous aspects of an ongoing divorce proceeding which are unrelated to a financial reorganization, such as a determination of custody, whereas here only financial

obligations are at issue.  Appointment of Nichols as special counsel in this Court when the

Debtor's divorce has been finalized does not seem to comport with the Congressional intent cited

*supra*, which notes that "*changing attorneys in the middle of the case* after the bankruptcy case

has commenced would be detrimental to the progress of that other litigation."  S. Rep. No. 95-

989, at 38–39 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5824–5825 (emphasis added).  The

Debtor's case also does not fall into the category of complex litigation envisioned by Congress.

*Id.*—such as lawsuits involving products liability or criminal convictions.

     Further, the Court is not convinced that Nichols' employment is "unrelated to the

reorganization," as required in *Goldstein* and *In re Running Horse, L.L.C.*, 371 B.R. 446, 451

(Bankr. E.D. Cal. 2007).  The *Running Horse* court denied the debtor in possession's request to

employ, as special counsel, a real estate and business law firm which had been seeking new

financing or buyers for the debtor's golf course.  *Running Horse*, 371 B.R. at 448–49.  The court

held that proposed special counsel was not sufficiently disconnected from the debtor in

possession's general duty of conducting the case, finding that:

> The [d]ebtor has already employed WLG, an experienced bankruptcy firm, to
> serve as its general counsel in virtually all aspects of the [d]ebtor's reorganization,
> including formulation of a chapter 11 plan.  At the very core of this bankruptcy
> case is the [d]ebtor's ability to sell its assets or obtain financing to complete the
> golf course/residential development. . . . . [Proposed special counsel]
> acknowledges in support of the [a]pplication that its expertise in real estate and
> business law is "necessary to understand the Running Horse project" and that
> WLG needs [proposed special counsel's] "real estate background and support."
>
> This court can find nothing "specific" or "special" about the intended scope of
> [proposed special counsel's] employment.  Neither can the court find that
> [proposed special counsel's] services giving "support to WLG," as described in
> the [a]pplication and supporting documents, are substantially unrelated to the
> [d]ebtor's reorganization effort.

*Running Horse*, 371 B.R. at 452.  *See also In re NRG Resources, Inc.*, 64 B.R. 643, 647 (W.D.

La. 1986) (finding § 327(e) "does not authorize the employment of the debtor's attorney to

represent the estate generally or represent the trustee in the conduct of the bankruptcy case").

The Debtor has represented to the Court that his proposed modification is a bankruptcy

issue, not a state law issue.[12]  [Finding of Fact No. 17].  The Court finds similarities between the

Debtor's attempt to employ Nichols and the proposal in *Running Horse*.  If the Debtor's Motion

to Modify should be entertained in this Court, then Cavalier—who is certainly knowledgeable

about the Debtor's cash flow during this Chapter 11 case and is also well-versed in what

obligations are non-dischargeable under §§ 523(a)(5) and (15)—is capable of representing the

Debtor.[13]  Indeed, the Motion to Modify would seem to fit well under sub-points (d) and (e) of

Cavalier's duties as general counsel, which he listed in his application for employment as:

> d. advise the Debtor in respect of bankruptcy or other such services as requested;
> and
>
> e. perform all other legal services in connection with this Chapter 11 case.

[Finding of Fact No. 9].

## B.  The Debtor has failed to meet his burden in showing that employment of Nichols is in the best interest of the estate.

In order to employ counsel under § 327(e), the trustee—in this case the Debtor, as the

debtor in possession—must also show that the proposed employment is in the "best interest of

the estate."  11 U.S.C. § 327(e).  *Running Horse*, 371 B.R. at 451.

---

[12] As already noted in footnote 10, at this juncture, the Court makes no findings or conclusions on the merits of the
Debtor's Motion to Modify.  A separate hearing on the Motion to Modify will be held on June 22, 2010.
[13] The Court agrees with *Running Horse* and notes the irony that the same factors which appear to make Nichols'
employment important also militate toward a conclusion that his employment will be too closely related to
"conducting the case."  *Running Horse*, 371 B.R. at 453.

The term "best interest of the estate" is not defined in the Bankruptcy Code. The Court therefore looks to the general duties of the debtor in possession in regards to his Chapter 11 estate. "The debtor in possession performing the duties of the trustee is the representative of the estate and is saddled with the same fiduciary duty as a trustee to maximize the value of the estate available to pay creditors." *Cheng v. K & S Diversified Investments (In re Cheng)*, 308 B.R. 448, 455 (B.A.P. 9th Cir. 2004), *aff'd*, 160 Fed. Appx. 644 (9th Cir. 2005). "[A] debtor in possession holds its powers in trust for the benefit of creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit." *Yellowhouse Machinery Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir. 1983), *quoting In re Kovacs*, 16 B.R. 203, 205 (Bankr. D. Conn. 1981).

The Debtor seeks to employ Nichols to reduce the amounts owed pursuant to the Divorce Decree. [Findings of Fact Nos. 21–22]. At the hearing, the Debtor argued that Ms. Johnson is not the only creditor of the estate; any amounts due to her that can be reduced under the supervision of the Court will benefit all other creditors. [Finding of Fact No. 27]. Yet, there is a dearth of evidence entered into the record on the matter outlining a concrete benefit to the estate. The Debtor's Motion to Modify consists of a cursory listing of the Debtor's obligations under the Divorce Decree and a statement that the Debtor's financial condition has changed since the entry of the Divorce Decree.[14] [Finding of Fact No. 11].

Even in his Application for Employment of Special Counsel, the Debtor simply avers that Nichols' employment would benefit the estate as he is "familiar with the Divorce Proceeding" and he could handle the Motion to Modify more efficiently than Cavalier. [Finding of Fact No. 26]. This is insufficient. As stated *supra*, the burden of proof resides with the Debtor to show

---

[14] The Court has scheduled a hearing on the merits of the Motion to Modify, and the Court trusts that the Debtor will introduce sufficient evidence to support the relief requested in the Motion to Modify.

that the employment is proper. *Needler*, 326 B.R. at 154. The Court will not draw inferences on behalf of the party with the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

"In addition, the need for special counsel must be for the benefit of the estate and not merely for the personal benefit of the debtor." *In re J.S. II, L.L.C.*, 371 B.R. 311, 320 (Bankr. N.D. Ill. 2007). Given the record that was made at the May 13, 2010 hearing, the Court concludes that the Debtor has failed to meet his burden in showing that his proposed retention of Nichols will benefit the estate, as opposed to the Debtor himself. Ms. Johnson's claims that Nichols' fees would drain money from the estate do not go unnoticed. The Court also notes that the Debtor still retains qualified counsel in Cavalier. To the extent that the Debtor's assertions that this Court can modify his Divorce Decree in the context of his Chapter 11 proceeding are correct, Cavalier is capable of arguing on behalf of such changes.

## C. The Debtor's Application to Employ Special Counsel is distinguishable from *Graves*, as the Debtor seeks a modification of his final Divorce Decree under the Bankruptcy Code.

Although neither the Debtor nor Ms. Johnson have cited the case of *In re Graves*, No. 08-80258, 2008 Bankr. LEXIS 3244 (Bankr. S.D. Tex. Sept. 4, 2008), the undersigned Judge nevertheless believes that out of respect to his colleague and author of the opinion, the Honorable Letitia Z. Clark[15] of the United States Bankruptcy Court for the Southern District of Texas, and in order to assist the bar in distinguishing between Judge Clark's decision and this Court's decision, it is important to compare the facts in *Graves* with those in the case at bar. In *Graves*, Judge Clark allowed a debtor in possession to employ special counsel to represent her in an appeal of a divorce decree. *Id.* The debtor was seeking special counsel, who had represented her

---

[15] Judge Letitia Z. Clark is now Judge Letitia Z. Paul.

in her divorce proceeding, to prosecute certain post-trial motions in the divorce court. *Id.* at *4. The debtor also sought approval for the appointment of this special counsel so that she could appeal the divorce decree and other judgments entered by the divorce court. *Id.*

These circumstances were factually different from the facts in the case at bar. Here, the Divorce Decree is final and neither party appealed the entry of this Decree. [Finding of Fact No. 1]. Indeed, the Divorce Decree was a product of both mediation and arbitration [Finding of Fact No. 2]; stated differently, the parties spent substantial time and money reaching a resolution of the very specific terms of this Decree. The Debtor now seeks to modify the Divorce Decree in this Court, with an attorney who specializes in family law, using money from his Chapter 11 estate. The Debtor is certainly entitled to seek a modification of the Divorce Decree, but it will be his bankruptcy counsel, Cavalier, not his proposed special counsel, Nichols, who will prosecute such a request.

## VI. CONCLUSION

Employing Nichols to appear as special counsel in this Court and prosecute the Debtor's Motion to Modify is not sufficiently distinct from assisting the Debtor (as debtor in possession) in conducting this Chapter 11 case as to be deemed a specified special purpose. The Debtor has also failed to introduce sufficient evidence that Nichols will provide a concrete benefit to the estate and not solely to the Debtor. For these reasons, the Application to Employ Special Counsel will be denied.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Memorandum Opinion.


Signed on this 10th day of June, 2010.

_____
Jeff Bohm
United States Bankruptcy Judge